UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:21-cv-00015-FDW

| | |
|---|---|
| RICARDO SHARP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

THIS MATTER is before the Court on Claimant Ricardo Sharp's ("Sharp") Motion for Summary Judgment (Doc. No. 12) filed August 18, 2021, Acting Commissioner of Social Security Kilolo Kijakazi's ("Commissioner") Motion for Summary Judgment (Doc. No. 15) filed October 15, 2021, and Sharp's Response (Doc. No. 18) filed October 26, 2021. Sharp seeks review of an unfavorable administrative decision on his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, the Court GRANTS Sharp's Motion for Summary Judgment; DENIES Commissioner's Motion for Summary Judgment; and REVERSES the Commissioner's decision and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Order.[1]

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405.

1

## I. BACKGROUND

Sharp filed an application for Title II benefits and Title XVI Supplemental Security Income on April 17, 2018 (Tr. 57, 59). Sharp alleges disability beginning April 14, 2015 (Tr. 59). After his application was denied initially and upon reconsideration, Sharp requested a hearing (Tr. 148). After a hearing on May 8, 2020 (Tr. 37), the ALJ issued an unfavorable decision (Tr. 12). Sharp's subsequent request for review by the Appeals Council was denied (Tr. 1).

The ALJ found Sharp had not engaged in substantial gainful activity since April 14, 2015, and met the insured status requirements through December 31, 2024. (Tr. 17). The ALJ found Sharp to have the following severe impairments: "diabetes, chronic kidney disease, and gastric disorder[.]" (Tr. 18). The ALJ determined Sharp did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ then found Sharp had the "Residual Functional Capacity ("RFC") to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c)." (Tr. 19). The ALJ determined Sharp "is capable of performing past relevant work as a delivery route driver, Dictionary of Occupational Titles code 292.353-010, medium exertional and a specific vocational preparation 3; and warehouse worker, Dictionary of Occupational Titles code 922.687, medium exertional level and a specific vocational preparation 2." (Tr. 24). The ALJ determined this type of work would "not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 24). The ALJ concluded that Sharp is not disabled and denied his benefits application. (Tr. 26). Sharp has exhausted all administrative remedies and now appeals pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). This Court does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§

3

404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not

4

> labeled severe at step two." <u>Mascio</u>, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

<u>Lewis</u>, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. <u>Mascio</u>, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [<u>Mascio</u>, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." <u>Id</u>.

<u>Lewis</u>, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. <u>Id</u>.

### III.   ANALYSIS

On appeal, Sharp claims the ALJ erred by: (1) failing to consider claimant's chronic kidney disease, diabetes mellitus, and gastric disorder causing nausea, vomiting, and diarrhea in its RFC determination, or at least explain why the RFC did not provide any limitation for these impairments; and (2) failing to properly consider the medical opinion of Dr. Runkle. (Doc. No. 13, p. 5, 11). Sharp also claims the government deprived him of a valid administrative adjudicatory

5

Case 1:21-cv-00015-FDW    Document 19    Filed 03/29/22    Page 5 of 9

process because the structure of the Social Security Administration ("SSA") is constitutionally invalid. (Doc. No. 13, p. 12, 13). The Court agrees that, on the record before the Court, remand is necessary as to the first assignment of error. In light of that ruling, the Court declines to address the remaining assignments of error.

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Monroe, 826 F.3d at 189 (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)). "Remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, 780 F.3d at 636. And while there is no "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis[,]" courts have found remand warranted where the ALJ fails to assess a "contested" function that is "critically relevant to determining [a claimant's] disability status . . . ." Dowling v. Comm'r of Soc. Sec. Admin., 986 F.3d 377, 388-89 (4th Cir. 2021).

Here, the ALJ found Sharp's gastric disorder to be one of his severe impairments. Both Sharp and his mother testified regarding his need to take unscheduled breaks because of nausea, vomiting, and diarrhea that Sharp attributes to his gastric disorder. Notwithstanding this testimony, the RFC determination is devoid of any accommodation for Sharp's need for breaks to

6

manage his severe medical impairment. Thus, the ALJ appears to have rejected the testimony regarding the need for unscheduled breaks. The ALJ does not, however, discuss or otherwise provide *any* analysis of Sharp's need for periodic bathroom breaks during the workday. The ALJ simply concluded that Sharp's "statements about the intensity, persistence, and limiting effects of his symptoms . . . are not supported by the objective medical assessments, his treatment regimen, and his response to treatment." (Tr. 20). The ALJ followed this conclusion with a summary of Sharp's medical records related to his medical treatment for episodes of nausea, vomiting, and/or diarrhea a handful of times each year from April 2015 to February 2020. Nothing in the ALJ's discussion of these records, however, undermines Sharp's testimony regarding his need for breaks while at work because of his nausea, vomiting, and diarrhea episodes. The ALJ thus failed to provide a logical link between the medical evidence and his apparent finding that Sharp did not require more time off task than is allotted in a typical workday. See Dowling, 986 F.3d at 389 ("Obviously, the need to visit the bathroom many times throughout the day impacts one's ability to work. And yet, the ALJ did not analyze [the claimant's] need for regular bathroom breaks."); see also Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) ("[T]he ALJ must both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion.").

In addition, the Court notes it appears the ALJ failed to provide a logical link between the evidence and the ALJ's conclusion that Sharp can work a "full medium exertional level," particularly where the consultative examination by Dr. Jackson suggested mild to moderate restrictions, the treating physician Dr. Runkle suggested various significant restrictions, and the State agency medical consultant determined Claimant could work at the full *light* exertional level.

7

Instead, the ALJ acknowledged these findings by Dr. Jackson, Dr. Runkle, and the State agency medical consultant, concluded Sharp can work at the full medium exertional level, and then repeated some of the medical evidence from earlier in the decision. Notably absent from this determination, however, is an explanation of how this evidence supports a finding of "full medium exertional level." Without any analysis, the Court is left to guess how the ALJ arrived at the RFC determination based on the evidence he listed.

## IV. CONCLUSION

In formulating the RFC, "the ALJ's logical explanation is just as important as the other two [components of the RFC analysis] . . . and our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." Thomas, 916 F.3d at 311 (citing Woods, 888 F.3d at 694). It is possible there are several explanations for the ALJ's conclusion that Claimant had the residual functional capacity to perform the full range of medium work with no limitations; however, without any analysis, the Court is unable to conclude that the ALJ's decision is supported by substantial evidence. Remand is warranted for further consideration so that the ALJ can offer an adequate explanation for his RFC determination.

As the Court has determined remand is required, the Court declines to consider any alleged errors not addressed herein. The Court explicitly notes that in ordering remand pursuant to sentence four of 42 U.S.C. § 405(g), the Court does not take a position on the merits of Sharp's application for disability benefits nor does the Court express any opinion as to his other assignments of error. The Court finds the ALJ's decision deficient for the reasons stated herein, and consequently, that decision as written cannot stand. See, e.g., Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's

8

decision[.]" (citations omitted)).  In declining to address the other assignments of error in dicta here,[2] the Court notes that remand provides the opportunity for the ALJ to modify any prior basis for the prior decision in the new decision issued upon remand.  "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a separate piece of litigation,' and a sentence-four remand order 'terminate[s] the civil action' seeking judicial review of the Secretary's final decision."  Shalala v. Schaefer, 509 U.S. 292, 299 (1993) (quoting Sullivan v. Finkelstein, 496 U.S. 617, 624-25 (1990)).

For the foregoing reasons, Sharp's Motion for Summary Judgment (Doc. No. 12) is GRANTED; the Commissioner's Motion (Doc. No. 15) is DENIED: and the ALJ's determination is REVERSED and REMANDED to the Commissioner for further proceedings consistent with this ORDER.

IT IS SO ORDERED.

Signed: March 28, 2022

Frank D. Whitney
United States District Judge

---

[2] The Court recognizes the Fourth Circuit, on occasion, will address additional assignments of error notwithstanding an order to remand.  See Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) (noting that "[n]ormally, our opinion would end here, and we would not go beyond ordering the ALJ to apply the regulation that it failed to observe;" but then summarily directing the ALJ to provide a more detailed explanation as to other errors "in the interests of judicial efficiency . . . ."); Bird, 699 F.3d at 343 (citing Sharpe v. Dir., Office of Workers' Comp. Programs, 495 F.3d 125, 134 n. 16 (4th Cir. 2007) (providing instructions for ALJ to follow on remand regarding issues not dispositive on appeal); Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984) ("Since the case must be reconsidered by the Secretary, we do provide some guidance as to a matter very likely to arise at the hearing which will occur.")).